**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FISH WINDOW CLEANING SERVICES, INC. a Missouri Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ALEX STINNETT, an Illinois citizen; COL 323 INC., an Illinois corporation; LACY STINNETT, an Illinois citizen; RIVER CITY WINDOW CLEANING LLC, an Illinois limited liability company,<br><br>Defendants. | Case File No. __________<br><br>**COMPLAINT** |

Plaintiff Fish Window Cleaning Services, Inc. ("Fish"), for its Complaint against Defendants Alex Stinnett, Lacy Stinnett, COL 323 Inc., and River City Window Cleaning LLC (collectively, "Defendants"), states and alleges as follows:

## INTRODUCTION

Defendant Alex Stinnett is a former franchisee of the Fish Window Cleaning Services® franchise system, which is owned by Fish. It is believed that Mr. Stinnett may have operated his franchised business under the entity COL 323 Inc. Defendants Alex Stinnett and COL 323 are collectively referred to as the "Franchisee Parties." In April 2026, Fish learned that the Franchisee Parties had falsified their gross sales and failed to pay royalties and brand fees due and owing under their Franchise Agreement with Fish. In addition, both prior to and following the expiration and non-renewal of their Franchise Agreement on September 20, 2026, the Franchisee Parties have conspired with Mr. Stinnett's wife, Defendant Lacy Stinnett – who was an employee of the

Franchisee Parties' former Fish Window Cleaning® franchised business – to operate a competing window cleaning business under the name River City Window Cleaning, in violation of the covenant not to compete in the Franchise Agreement. Moreover, Fish recently learned that Defendants have created and are operating an additional competing business under the name "Made New Quincy." Defendants have diverted and/or transferred Fish's customers to the competing businesses in violation of the contractual obligations in the Franchise Agreement.

More specifically, Defendants are operating their competing businesses, River City Window Cleaning and Made New Quincy, in the same location as the Franchisee Parties' former franchised business using the same phone number associated with that franchised business. They are also using Fish's confidential information and customer information, and providing services to the same customers that the Franchisee Parties serviced when they were a Fish Window Cleaning® franchisee. Defendants are also using the Fish Window Cleaning® tradename and trademarks in online advertisements. Defendants' conduct violates the Franchise Agreement and federal trademark law. Thus, Fish seeks: (1) an immediate and permanent injunction prohibiting Defendants and those acting in concert and participation with them from operating a competing business in violation of the non-compete provision of the Franchise Agreement; (2) an immediate and permanent injunction prohibiting Defendants and those acting in concert and participation with them from violating the post-termination provisions of the Franchise Agreement, including use of Fish's trademarks, confidential information, and customer information; (3) monetary damages relating to Defendants' underreporting of gross sales, breach of post-termination obligations, and unlawful conduct; and (4) an award of attorneys' fees and costs.

## PARTIES

1. Fish is a Missouri corporation with its principal place of business located at 217 Chesterfield Towne Centre, Chesterfield, MO 63005.

2. Defendant Alex Stinnett is a citizen of the State of Illinois and resides at 1205 Emerald Dr., Quincy, Illinois 62301. Mr. Stinnett was a franchisee of the Fish Window Cleaning® franchise system and was also a personal guarantor of the Franchise Agreement.

3. Defendant COL 323, Inc. is an Illinois corporation with its principal place of business located at 526 South 8th Street, Quincy, Illinois 62301. Alex Stinnet is the owner of COL 323 Inc. and, upon information and belief, operated his former Fish Window Cleaning® franchised business under that entity.

4. Defendant Lacy Stinnett is a citizen of the State of Illinois and resides at 1205 Emerald Dr., Quincy, Illinois 62301. Ms. Stinnett is married to Alex Stinnett and worked as an employee of Mr. Stinnett's former Fish Window Cleaning® franchised business.

5. Defendant River City Window Cleaning LLC is an Illinois limited liability company. Its principal place of business is also 526 South 8th Street, Quincy, Illinois 62301. Ms. Stinnett is identified as the "manager" of River City Window Cleaning on its registration with the Illinois Secretary of State. The Franchisee Defendants and Ms. Stinnett own and operate this business.

6. Made New Quincy is not a registered entity and the Franchisee Defendants and Ms. Stinnett are, instead, operating a competing business under that assumed name.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant 28 U.S.C. § 1332, because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8. This action involves trademark infringement under the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1051, et seq. This Court has subject matter jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a), 1121, and 28 U.S.C. §§ 1331 and 1338.

9. This Court has supplemental jurisdiction over Fish's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claims in this action that they form part of the same case or controversy.

10. This Court has personal jurisdiction over Defendants because they reside in and conduct business in this District.

11. This Court has personal jurisdiction over Defendants because each Defendant has a principal place of business or is a resident of Illinois and, therefore, is subject to general personal jurisdiction in this State. In addition, this action arises directly from the Franchisee Defendants' conduct in Illinois, including the ownership and operation of the franchised businesses at issue, and Defendants' operation of their competing business. Defendants have purposefully conducted business in Illinois and purposefully availed themselves of the privileges and benefits of doing business in Illinois. Accordingly, the exercise of personal jurisdiction over Defendants comports with Illinois law and the requirements of due process

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Fish's claims occurred in this District and Defendants reside in this District.

## FACTUAL BACKGROUND

### A. The Fish Window Cleaning® Franchise System and Trademarks.

13. Fish has developed a system for the operation and promotion of interior and exterior window cleaning and residential and commercial cleaning services (the "Fish Window Cleaning® System").

14. Under Section 1.C of the Franchise Agreement, the Fish Window Cleaning® System "consists of the operation of a Fish Window Cleaning Business using distinctive proprietary services and products under [Fish's] Trademarks and utilizing certain distinctive types of supplies, services and procedures, marketing programs, bookkeeping and accounting materials …." Further, as stated in Section 1.A, a Fish Window Cleaning® business "features a unique system of commercial and residential cleaning services, including glass (all types), gutter, light fixture, screen door and sign cleaning and the techniques for offering, selling and marketing the services, including quality control techniques, advertising and promotional programs." Pressure washing is also a Fish Window Cleaning® service. A true and correct copy of the Franchise Agreement is attached as Exhibit A.

15. Through the execution of franchise agreements, Fish authorizes individuals and corporations to use the Fish Window Cleaning® System and Fish's confidential information, including proprietary information, knowledge and know-how, processes, materials, methods, procedures, suggested pricing, specifications, techniques, customer lists and other data concerning the methods of operation of a Fish Window Cleaning® business ("Confidential Information").

16. In addition, Fish authorizes franchisees to use its trade names, trademarks and service marks, and to benefit from the goodwill associated with such marks (collectively the "Marks" or "Fish Marks"). Fish owns numerous federal registrations for the Marks including,

without limitation, Registration Nos. 2,244,693 and 2,631,518. Those registrations are in full force and effect and are incontestable.

17. The Marks have been used continuously in interstate commerce in the United States since at least 1999 to identify the Fish Window Cleaning® System and the products and services associated with that System.

18. The Marks have been widely advertised and promoted by Fish over the years. As a result of the extensive sales, advertising, and promotion of products and services identified by the Marks, the public has come to know and recognize the Marks and to associate them exclusively with the products and services offered by Fish Window Cleaning® System franchisees.

19. Pursuant to Section 3.A of the Franchise Agreement, the Franchisee Parties agreed and acknowledged that Fish is the exclusive owner of the Marks, and that the Franchisee Parties' use of the Marks, and any goodwill generated thereby, inures to the benefit of Fish.

20. In Section 3.B, the Franchisee Parties agreed to use the Marks only in the form and manner prescribed by Fish in writing.

**B. The Franchise Agreement Between Fish and Defendant Alex Stinnett.**

21. Defendant Alex Stinnett entered into a franchise agreement with Fish on September 20, 2016 (the "Franchise Agreement"), which granted him a nonexclusive license and right to operate a Fish Window Cleaning® franchise using the Fish Window Cleaning® System, Marks, and Confidential Information for a term of ten years in a Territory defined and listed in Appendix B to the Franchise Agreement. The Territory consists of the following counties in the state of Illinois: Pike County, Clark County, Hancock County, Lewis County, Marion County, Adams County, and McDonough County.

22. Defendant Alex Stinnett also executed a Personal Guarantee of the Franchise Agreement, in which he guaranteed that he would be personally liable and responsible for all of the obligations and covenants that are set forth in the Franchise Agreement, including the payment of all amounts due under the Franchise Agreement and the performance of all post-termination obligations. A true and correct copy of the Personal Guarantee of the Franchise Agreement is attached to the Franchise Agreement.

**C. Training and Confidential Information Received by the Defendants.**

23. As a Fish Window Cleaning® franchisee, the Franchisee Parties received extensive training from Fish, as well as access to Fish's Confidential Information, including information on topics such as bidding, pricing, routing, equipment, and cleaning techniques. The Franchisee Parties also received support from Fish in pricing, equipment, and marketing for pressure washing Fish Window Cleaning® services. They also received access to Fish's proprietary database called the Fishing Hole, which contains Fish's Confidential Information and proprietary materials, standards, policies, and procedures related to the operation of a Fish Window Cleaning® business. For example, the Fishing Hole contains information on commercial and residential cleaning, pricing, and routing, business generation, sales, and marketing. All of this information is confidential, proprietary and competitively sensitive.

24. As the wife of Defendant Alex Stinnett, and a former employee of his former Fish Window Cleaning® business, Defendant Lacy Stinnett received access to Fishing Hole and Fish's confidential and proprietary information.

25. Pursuant to Section 6.D of the Franchise Agreement, the Franchisee Parties agreed and acknowledged that Fish has expended considerable time, effort, skill and financial resources in developing and establishing the Fish Window Cleaning® System, and that the materials on the

Fishing Hole at all times remain the sole property of Fish and are to be treated as secret and confidential.

26. The Franchisee Parties agreed in Section 6.F that during and after the term of the Franchise Agreement, they would not "communicate, divulge or use for the benefit of any other person or entity any Confidential Information," and that "[a]ny and all Confidential Information must not be used for any purpose other than conducting [the Franchisee Parties' franchised] Business in the Territory."

27. In addition, in Section 6.G, the Franchisee Parties agreed that Fish owns the customer list and related customer accounts of their Fish Window Cleaning® franchised business, and that they would "not use the customer list or account information for any purpose whatsoever other than in the normal conduct" of their Fish Window Cleaning® business.

**D. The Franchisee Parties' Reporting and Payment Obligations.**

28. In Section 8.B of the Franchise Agreement, the Franchisee Parties agreed to pay a Royalty Fee on a sliding scale based on the business's Gross Sales. This amount was 8% of the first $300,000 of Gross Sales, with the percentage diminishing as Gross Sales increased. Section 2.C and Appendix B establish a Minimum Performance Standard that takes effect should Gross Sales fall below certain specified levels.

29. Gross Sales is defined in Section 1B of the Franchise Agreement as:

> [T]he total revenues, receipts, value of any barter of exchange of services, or any other consideration received, whether in cash or on credit or otherwise, from the sales made and services provided by you in connection with your Business, less any (i) properly documented refunds, charge-backs or other allowances given to customers or (ii) sales taxes if separately stated when the customer is charged and actually paid to the appropriate taxing authority.

30. In Section 9.A, the Franchisee Parties agreed to pay a Brand Building Fee equal to the greater of 1% of Gross Sales or 1% of the applicable Minimum Performance Standard.

31. Pursuant to Section 8.G, the Franchisee Parties agreed to maintain full and complete records, accounts, books, data, tax records and returns, and contracts that accurately reflect all particulars relating to its business during the term of the Franchise Agreement and for a period of seven years thereafter.

32. As part of Section 8.G, the Franchisee Parties also agreed to submit, among other reports, a weekly report of Gross Sales, sales tax, Royalty Fees and Brand Building Fees. The Franchisee Parties further agreed that they would provide "all books, records, tax returns, customer contracts or other information" as requested by Fish in order to verify their Gross Sales.

33. Under Section 8.G, the Franchisee Parties agreed that, in the event of an audit conducted by Fish or its authorized representative reveals an understatement of Gross Sales, Royalty Fees, or other material financial information related to their Fish Window Cleaning® franchised business of 2% or more from data reported to Fish, in addition to Fish's other rights it may have, the Fish Parties must reimburse Fish for all audit costs.

34. Also under Section 8.G, the Franchisee Parties agreed to pay interest at the lesser rate of 18% per annum or the maximum rate allowed by law on all past due amounts owed to Fish.

35. In Section 11.A, the Franchisee Parties agreed that it would be a default to make any false report to Fish, and under Section 11.B.2, the Franchisee Parties agreed that it would be a default to willfully and materially falsify any report, statement or other written data furnished to Fish.

**E. The Franchisee Parties' Post-Termination Obligations and Covenant Not to Compete.**

36. In Section 12.A of the Franchise Agreement, the Franchisee Parties agreed that upon expiration they would immediately cease using and displaying the Marks and cancel any assumed names relating to the Marks. They also agreed, under Section 12.A and Appendix D, to

cease use of the telephone numbers associated with their former Fish Window Cleaning® business and to notify the telephone company and listing agencies of the termination of their right to use those numbers.

37. In Section 12.A, the Franchisee Parties further agreed to return all copies of materials from the Fishing Hole, in addition to any training videos and licensed software.

38. In Section 6.G, the Franchisee Parties agreed that "upon termination or expiration of [the Franchise] Agreement, [they] must promptly deliver to [Fish] a complete list of current and former customers, said customer's contracts, including name, telephone number, complete mailing address, type of service, price of service and other customer information" as Fish requests.

39. The Franchisee Parties also agreed to a reasonable post-expiration noncompetition provision in Section 12.B of the Franchise Agreement. Specifically, the Franchisee Parties agreed that upon the expiration of the Franchise Agreements they would not, for a period of one year following expiration, "engage as an owner, partner, director, officer, employee, consultant, sales person, representative or agent in any other capacity in any Competitive Activity" (i) in their Territory, (ii) within a five-mile radius surrounding their Territory, or (iii) in the territory of another Fish Window Cleaning® business.

40. Competitive Activity is defined in Section 12.B as "any window cleaning business or any other business that sells products and services similar to the products and services sold by a Fish Window Cleaning Business." As stated in Section 1.C of the Franchise Agreement, a Fish Window Cleaning® business is described in Section 1.A as "featur[ing] a unique system of commercial and residential cleaning services, including glass (all types), gutter, light fixture, screen door and sign cleaning.

41. Importantly, the Franchisee Parties acknowledged in Section 13.B that "failure on the part of a single franchisee to comply with the terms of its agreement could cause irreparable damage to [Fish] and/or to some or all of [Fish's] other franchisees." Thus, the Franchisee Parties agreed that Fish is entitled to seek injunctive relief to enforce the covenant not to compete, prevent the infringement of Fish's Marks, prevent the disclosure or misuse of Confidential Information – including Fish's customer list and customer information, or in the event of a breach or threatened breach of the terms of the Franchise Agreement.

42. The Franchisee Parties agreed in Section 16.J of the Franchise Agreement that Fish is entitled to recover its reasonable attorneys' fees and costs if it prevails in any legal proceeding to enforce the terms and provisions of the Franchise Agreement.

**F. The Franchisee Parties' Underreporting of Gross Sales.**

43. In April 2026, a former employee of the Franchisee Parties advised Fish that the Franchisee Parties were underreporting their Gross Sales.

44. After conducting an investigation, Fish learned that the Franchisee Parties had serviced several Fish Window Cleaning® clients without reporting those transactions in the FISH 3 proprietary database. More specifically, Fish uncovered an overwhelming amount of "fake" work orders that are not in the FISH 3 database, which demonstrate the Franchisee Parties were getting paid for cleaning jobs that were not been reported or processed through the FISH 3 database in violation of the Franchise Agreement.

45. The "fake" work orders clearly demonstrate that the Franchisee Parties have failed to properly report all Gross Sales and, therefore, failed to pay Royalty and Branding Fees due and owing to Fish.

46. Accordingly, Fish issued a Notice of Default and Audit on May 28, 2026 ("Audit Notice"), exercising its right to audit the Franchisee Parties' books and records in accordance with Section 8.G of the Franchise Agreement. A true and correct copy of the Audit Notice is attached as Exhibit B. As part of the Audit Notice, Fish requested electronic copies or photocopies of specific financial and business records, to be delivered within 30 days from the Franchisee Parties receipt of the letter.

47. The Audit Notice also demanded that Defendants cure the identified defaults within 30 days by doing the following:

- Fully comply with the Audit Notice;
- If the audit demonstrates you have underreported your Gross Sales, you must pay Fish any deficiency in fees owed, together with interest and service charges, as provided for in Section 8.H of the Franchise Agreement, within thirty (30) days of being notified of any such deficiency;
- If the audit demonstrates you have underreported your Gross Sales by 2% or more, you must pay Fish all costs and expenses (including the related professional fees or accounting fees) that Fish incurs as a result of the audit within thirty (30) days of being notified of the audit results; and
- Accurately report Gross Sales and pay all of the required Royalty Fees and Branding Fees moving forward.

48. In response to the Audit Notice, the Franchisee Parties admitted that they had engaged in the fraudulent underreporting of Gross Sales, acknowledged that they owed $25,083 due to their fraudulent underreporting, but did not provide all of the requested books and records.

**G. Expiration and Non-Renewal of the Franchise Agreement.**

49. The Franchise Agreement expired on September 20, 2026.

50. Prior to expiration, Fish sent the Franchisee Parties a Notice of Non-Renewal and Expiration of Franchise Agreement letter dated September 18, 2026 ("Notice of Expiration"). A true and correct copy of the Notice of Expiration is attached as Exhibit C.

51. As part of the Notice of Expiration, Fish reminded the Franchisee Parties of their post-termination obligations, including their obligation to comply with the covenant not to compete in Section 12.B of the Franchise Agreement.

**H. Defendants' Unlawful Scheme and Conspiracy to Evade Royalties and Noncompete Obligations.**

52. Fish has obtained records and information demonstrating that Defendants formed a conspiracy to attempt to circumvent the noncompetition obligations in the Franchise Agreement prior to its expiration. Specifically, on or about July 13, 2026, Defendants formed River City Window Cleaning LLC for the purpose of operating a competing window cleaning business. A true and correct copy of River City Window Cleaning's registration with the Illinois Secretary of State is attached as Exhibit D.

53. River City Window Cleaning's registration identifies Defendant Lacy Stinnett as the "manager" of the business. In addition, the address associated with the business is 526 South 8th Street, Quincy, Illinois, which is the same address as the Franchisee Parties' former Fish Window Cleaning® franchised business.

54. Defendants have also created several websites for its competing River City Window Cleaning business, which demonstrates that Defendants' competing business offers the exact same services as the Franchisee Parties' former Fish Window Cleaning® business. Defendants created www.rivercitywindowcleaning.com on July 13, 2026, www.windowcleaningquincyil.com on August 4, 2026, www.guttercleaningquincyil.com on August 4, 2026, and www.pressurewashingquincyil.com on August 4, 2026. True and correct copies of screenshots of the WHOIS Database search results from GoDaddy demonstrating the creation of these websites before the expiration of the Franchise Agreement is attached as Exhibit E. True and correct copies of screenshots of the websites are attached as Exhibits F (www.rivercitywindowcleaning.com), G

(www.guttercleaningquincyil.com), H (www.pressurewashingquincyil.com), and I (www.windowcleaningquincyil.com).

55. Defendants' competing business offers services to the customers of their former Fish Window Cleaning® franchised business. As evidence of this, Fish has received several phone calls from customers who have complained and/or expressed confusion over the "name change" from "Fish Window Cleaning" to "River City Window Cleaning."

56. After Defendants were notified in late September 2026 that they, including Lacey Stinnett, lacked any legal right to operate a competing business, Fish learned that Defendants were operating an additional competing business. Fish retained a private investigator, who called the (217) 224-6322 telephone number previously associated with the Franchisee Parties' former Fish Window Cleaning® franchise on September 28, 2026, and then visited its location at 526 South 8th Street, Quincy, Illinois 62301 on October 6, 2026. After the investigator left a voicemail, Carl Ross Bartlett, a former employee of Alex Stinnett and COL 323, returned the investigator's call on September 29, 2026. Mr. Bartlett stated to the investigator that "they" were no longer affiliated with Fish and were going to start their own window cleaning company called "Made New Quincy." Mr. Bartlett further provided the investigator with a quote for window cleaning services and subsequently followed up to determine whether she wished to proceed with those services. Notably, the quote contained the address, 526 South 8th Street, Quincy, Illinois 62301, associated with the Franchisee Parties' former Fish Window Cleaning® business. The private investigator also took photos of the outside of the Franchisee Parties' former location and there was machinery with a sign that read, "Pressure Washing & Protective Sealing (212) 224-6322" parked in front of the office building. This demonstrates that the Franchisee Parties are operating a competing business using the telephone number and business address associated with their former Fish

Window Cleaning® franchise, using the goodwill built up at the location, and targeting the same customers they serviced as Fish Window Cleaning® franchisees. Attached as Exhibit J are true and correct copies of the quote and pictures taken in front of the location.

57. It is evident that Defendants are providing services to customers of their Fish Window Cleaning® customers in effort to capitalize on the goodwill associated with their former Fish Window Cleaning® franchised business.

**I. Defendants' Breaches of the Post-Termination Obligations.**

58. Following the expiration of the Franchise Agreement, Defendants are using the Marks, Confidential Information, and customer list in the operation of their competing River City Window Cleaning and Made New Quincy businesses. They are also operating those businesses at the same location as the Franchisee Parties' former franchised business – 526 S 8th St., Quincy, Illinois 62301 and using the same telephone number associated with their former Fish Window Cleaning® business ((217) 224-6322).

59. Specifically, as evidenced by the attached screenshots from Yelp.com, Google, Mapquest, and Manta, the Franchisee Parties are continuing to use the Fish Marks online and the telephone number and address associated with their former franchised business. True and correct screenshots from these online platforms are attached as Exhibit K.

60. Although Alex Stinnett previously worked as a window cleaner for the prior owner of his former Fish Window Cleaning® franchise, Alex Stinnett did not operate or own an independent commercial and residential cleaning business before purchasing the franchise from the prior owner. Consequently, the Fish Window Cleaning® System and Confidential Information are inextricably connected with the products and services that Defendants are now providing at their competing River City Window Cleaning and Made New Quincy businesses. The Franchisee

Parties have not returned the Confidential Information to Fish or provided a complete customer list, as required by the Franchise Agreement.

61. Fish suffers irreparable harm to its franchise system and customer goodwill each day that Defendants continue to operate competing businesses in the same Territory as their previously franchised Fish Window Cleaning® business, using Fish's Confidential Information and customer list, telephone number, and Marks.

62. Because Defendants are not current franchisees, Fish has no control over Defendants or their competing businesses. Consequently, Defendants are using the Fish Window Cleaning® System, the Confidential Information, and the Marks in a manner that Fish cannot oversee or control.

63. Defendants' operation of their competing businesses is further damaging Fish by preventing it from establishing a new franchise in the Franchisee Parties' former Territory and by wrongfully diverting Fish's customers and business to Defendants' competing business. There are two nearby Fish Window Cleaning® franchisees, in Peoria, Illinois and Bowling Green, Missouri, who could service the Fish customers formerly served by the Franchisee Parties.

64. Fish has no adequate remedy at law, and the only meaningful relief available to it is an injunction enjoining Defendants from wrongfully violating their post-termination noncompete and other post-termination obligations, and from infringing upon the Fish Marks.

## COUNT I
## BREACH OF FRANCHISE AGREEMENT AND PERSONAL GUARANTEE FAILURE TO SUBMIT REPORTS AND TO PAY FEES AND OTHER AMOUNTS (Franchisee Parties)

65. Fish realleges all of the previous allegations as if fully set forth herein.

66. The Franchise Agreement and Personal Guarantee are lawful and binding contracts.

67. The Franchisee Parties had a contractual obligation under the Franchise Agreement to report the Gross Sales of their franchised business and to pay Royalty and Brand Building Fees based on Gross Sales as set forth in the Franchise Agreement.

68. By virtue of executing the Personal Guarantee, Alex Stinnett agreed to be personally liable and responsible for the Franchisee Parties' breaches of the Franchise Agreement, including for any fees and other amounts due and owing to Fish.

69. Upon expiration, the Franchisee Parties were obligated to pay Fish all Royalty and Brand Building Fees and all other amounts due and owing.

70. Fish has performed all conditions, covenants, and promises required to be performed under the Franchise Agreement.

71. The Franchisee Parties are in breach of the Franchise Agreement and Personal Guarantee as a result of their failure to report and pay all Royalty and Brand Building Fees and other amounts due and owing under the Franchise Agreement.

72. As a direct result the Franchisee Parties' breaches, Fish has been damaged in an amount exceeding $75,000, exclusive of interest and costs, with the precise amount to be proven at trial, plus costs, disbursements, interest, and attorneys' fees.

**COUNT II**
**BREACH OF FRANCHISE AGREEMENT AND PERSONAL GUARANTEE**
**FAILURE TO COMPLY WITH POST-TERMINATION OBLIGATIONS**
**(Franchisee Parties)**

73. Fish realleges all of the previous allegations as if fully set forth herein.

74. The Franchisee Parties have failed to comply with the post-termination obligations set forth above, including by operating competing businesses, and continuing to use the Marks, telephone number, Confidential Information, and customer list. This conduct constitutes material breaches of the provisions of the Franchise Agreement and Personal Guarantee.

75. The Franchisee Parties are obligated, by operation of the Franchise Agreement and Personal Guarantee, to comply with these post-termination obligations.

76. The Franchisee Parties' failure to comply with the post-termination obligations set forth in the Franchise Agreement, operation of competing businesses, and unlawful use of the Marks, telephone number, Confidential Information, and customer list is causing irreparable harm and damage to Fish.

77. Fish has no adequate remedy at law to protect its substantial business and property rights at issue in this lawsuit. The damages from the Franchisee Parties' failure to comply with the post-termination obligations of the Franchise Agreement are considerable and continuing and thus not capable of ascertainment at this time.

78. Fish is entitled to preliminary and permanent injunctive relief enforcing all post-termination obligations of the Franchise Agreement, preventing Defendants from using the Fish Marks, telephone number, Confidential Information, and customer list, and preventing Defendants from operating competing businesses in violation of the post-termination non-compete provisions.

79. As a direct and proximate result of the Franchisee Parties' actions, Fish has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damages, for breaches of post-termination obligations, in an amount to be proven at trial, plus costs, disbursements, interest, and attorneys' fees.

## COUNT III
## FRAUD
## (Franchisee Parties)

80. Fish realleges all of the previous allegations as if fully set forth herein.

81. The Franchisee Parties submitted weekly reports to Fish in the FISH 3 database detailing their Gross Sales and transactions.

82. The weekly reports that the Franchisee Parties submitted were false because the reports did not accurately reflect all of their Gross Sales.

83. The representations made in the weekly reports are material because the reports determine the revenue that Fish is due under the Franchise Agreement in the form of Royalties and Brand Fees that are based off of the Franchisee Parties' Gross Sales.

84. The Franchisee Parties knew that the representations of theirs Gross Sales and transactions were false.

85. The Franchisee Parties intended that Fish act upon the false representations to determine the Franchisee Parties' Royalties and Brand Fees due under the Franchise Agreement.

86. Fish did not know of the falsity of the representations in the weekly reports.

87. Fish relied on the representations in the reports being true and had a right to rely on the representations as true because the Franchisee Parties were contractually obligated to submit accurate reports.

88. As a direct result of the Franchisee Parties' fraudulent misrepresentations, Fish has been damaged in an amount exceeding $75,000, exclusive of interest and costs, with the precise amount to be proven at trial, plus costs, disbursements, interest, and attorneys' fees.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(Lacy Stinnett and River City Window Cleaning LLC)**

89. Fish realleges all of the previous allegations as if fully set forth herein.

90. Lacy Stinnett and River City Window Cleaning are aware of the existence of the Franchise Agreement and Personal Guarantee, to the extent Ms. Stinnett is the spouse of Alex Stinnett and the owner of River City Window Cleaning.

91. Lacy Stinnett and River City Window Cleaning are aware of the obligations of the Franchisee Parties to refrain from operating competing businesses as provided in Section 12.B of the Franchise Agreement.

92. Lacy Stinnett and River City Window Cleaning tortiously interfered with Fish's contractual relationship with the Franchisee Parties by conspiring with them to establish a competing business at the same location as the former franchise, using Fish's Confidential Information (including its customer list and information), using Fish's telephone number, and soliciting customers of the former franchise.

93. Lacy Stinnett (in active participation with the Franchisee Defendants) formed River City Window Cleaning and used it for the operation of the competing business with the intent to evade the Franchisee Parties' obligations under the Franchise Agreement and Personal Guarantee, particularly the obligation to refrain from operating a directly competitive business after expiration and termination of the Franchise Agreement.

94. Lacy Stinnett and River City Window Cleaning's tortious interference with Fish's contractual rights was intentional and without justification.

95. As a direct result of Lacy Stinnett and River City Window Cleaning's tortious interference with Fish's contractual rights, Fish has been damaged in an amount exceeding $75,000, exclusive of interest and costs, with the precise amount to be proven at trial, plus costs, disbursements, interest, and attorneys' fees.

## COUNT V
## CIVIL CONSPIRACY
## (All Defendants)

96. Fish realleges all of the previous allegations as if fully set forth herein.

97. With full knowledge of the non-compete obligations contained within the Franchise Agreement, Defendants developed a plan and scheme to set up and operate their competing River City Window Cleaning and Made New Quincy businesses in the same location as the Franchisee Parties' former Fish Window Cleaning® business for the specific purpose and intent of soliciting and diverting Fish's customers to River City Window Cleaning and Made New Quincy and to evade the non-compete provisions in the Franchise Agreement.

98. The purpose and objective of Defendants' conduct was to cause Fish's customers to cease doing business with Fish and instead do business with River City Window Cleaning and Made New Quincy, while at the same time avoiding the obligations under the terms of the Franchise Agreement.

99. Defendants created, planned, and implemented their conspiracy in secret to deprive Fish of financial benefits and deprive Fish of the opportunity to retain customer goodwill developed under the Fish Window Cleaning® name, Marks, franchise system, and reputation.

100. As a direct result of Defendants' conduct, Fish has been damaged in an amount to be proven at trial, plus costs, disbursements, interest, and attorneys' fees.

## COUNT VI
## TRADEMARK INFRINGEMENT
## (All Defendants)

101. Fish realleges all of the previous allegations as if fully set forth herein.

102. Fish has registered certain of its Marks with the United States Patent and Trademark Office.

103. Since registering its Marks, Fish has extensively advertised its Marks in connection with its products and services.

104. Defendants have no right to use the Fish Marks.

105. Notwithstanding demands by Fish that Defendants cease their use of the Marks, Defendants continue to unlawfully use and display the Fish Marks and trade name.

106. Defendants' unauthorized use and display of Fish's Marks constitutes willful and intentional infringement of the Marks in violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

107. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

108. Defendants' use in commerce of the Marks and trade name without the consent of Fish, is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by or associated with Fish.

109. Fish has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

110. Fish has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

111. Fish is entitled to preliminary and permanent injunctive relief preventing Defendants from further infringement of the Marks, plus costs, disbursements, interest and attorneys' fees.

## COUNT VII
## FALSE DESIGNATION OF ORIGIN/UNFAIR COMPETITION
## (All Defendants)

112. Fish realleges all of the previous allegations as if fully set forth herein.

113. Defendants have infringed Fish's rights by using and displaying the Marks and trade name.

114. Due to Defendants' infringement and conduct, customers are likely to be confused and induced into patronizing Defendants' competing businesses in the belief that the goods and services are affiliated, connected, or associated with Fish Window Cleaning®. Customers have been or are likely to be confused as to the sponsorship of the cleaning services sold by Defendants while they continue to hold themselves as a former licensee of the Fish Window Cleaning® System.

115. Defendants' actions constitute unfair competition in violation of 15 U.S.C. § 1125(a) and common law.

116. Defendants' acts were done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

117. Fish has suffered and is continuing to suffer irreparable injury and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

118. Fish has no adequate remedy at law to protect its substantial business and property rights. The damages from Defendants' activities are considerable and continuing and thus not capable of ascertainment at this time.

119. Fish is entitled to preliminary and permanent injunctive relief preventing Defendants' unfair competition, plus costs, disbursements, interest and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Fish respectfully requests the following relief:

A. For an order for a preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately cease operating a competing

business (including, but not limited to, River City Window Cleaning and Made New Quincy), in violation of Section 12.B of the Franchise Agreement;

B. For an order for a preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately comply with the post-termination obligations set forth in the Franchise Agreement, including but not limited to the provisions of Section 6.F and G that require Defendants to cease using Fish's Confidential Information and customer list, the provisions of Section 12.A that require Defendants to cease using and displaying the Marks, and the provisions of Section 12.A and Appendix D that require Defendants to cease using the telephone number associated with their former Fish Window Cleaning® business, (217) 224-6322;

C. For an order for a preliminary and permanent injunction directing Defendants to port the (217) 224-6322 telephone number to Fish, and to immediately transfer to Fish all telephone numbers associated with their former Fish Window Cleaning® business, and to notify the telephone company and listing agencies of the termination of their right to use those numbers;

D. For an order for a preliminary and permanent injunction directing Defendants, and all others in active concert or participation with them, to immediately cease using or employing any of the Marks and to immediately cease engaging in unfair competition with Fish;

E. For an award against Defendants, jointly and severally, for the damages Fish has sustained and the profits Defendants have derived as a result of their violations of the Franchise Agreement and Personal Guarantee, in an amount to be proven at trial;

F. For an award against Defendants for the damages caused to Fish as a result of Defendants Lacy Stinnett and River City Window Cleaning LLC's tortious interference with Fish's contractual relations;

G. For an award against Defendants, jointly and severally, for the damages Fish has sustained and the profits Defendants have derived as a result of their violations of the Lanham Act, pursuant to § 35 of the Lanham Act, 15 U.S.C. § 1117;

H. For an award against Defendants, jointly and severally, for treble damages and prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

I. For an award against Defendants, jointly and severally, for Fish's reasonable costs and expenses, including attorneys' fees, incurred in enforcing the provisions of the Franchise Agreement, as allowed under the Franchise Agreement and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

J. For such other relief as the Court deems just and proper.

DATED: October 14, 2026 **LATHROP GPM LLP**

By /s/ Bryan E. Minier
Bryan E. Minier (#6275534)
155 North Wacker Drive, Suite 3800
Chicago, IL 60606
Telephone: 312-920-3300
Email: bryan.minier@lathropgpm.com

and

Craig P. Miller (#26961X) (*pro hac vice* to be filed)
3100 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612-632-3258
Email: craig.miller@lathropgpm.com

**ATTORNEYS FOR PLAINTIFF**